Case No. 13-6536 and 14-5168, United States of America v. Lereginald Strong and Joseph Banks Argument not to exceed 10 minutes for each defendant and 20 minutes for plaintiff Mr. Poehler and Mr. Sullivan for the appellant Good morning. I'm Tyrone Poehler. I'm an assistant federal defender for the Western District of Tennessee where Ms. Doris Randall Holt is the federal defender. We represent Lereginald Strong. I'd like to reserve two minutes for rebuttal. Your Honor, we appear before the court with three assignments of error at the district court level. The first is that the district court erred in sustaining a bashing challenge by the government when the defense offered a racially neutral explanation for the juror that we attempted to strike. Next, that the evidence as it relates to Lereginald Strong was insufficient to support a conviction for carjacking and the related 924C conviction for use of that firearm in connection with the carjacking. Last, that the court erred in applying the cross-reference pursuant to the guidelines to attempted murder as it relates to Lereginald Strong. In analyzing the bashing challenge, the court proceeded in the three-prong analysis. First, it determined that the government had established a prime official case as it relates to the excluded juror. And then it proceeded to the second step of the analysis. In that step, we offered to the court two reasons that this potential juror or prospective juror should be eliminated. Those reasons were that the juror worked or worked for another prospective juror that was in the panel. And the second reason was that Mr. Strong noticed that the juror was staring at him and made him uncomfortable. In the analysis, the court completely disregarded those reasons as pretextual. But he went on to do the analysis for the third prong and stated that the government had carried its burden in establishing that there was purposeful discrimination in seeking to eliminate that. Your Honors, the district court failed to do any analysis as it relates to the reason proffered in that the prospective juror worked with one of the other prospective jurors. We assigned this error and we would ask the court to reverse this and remand it for a new trial because of that. The reason the court offered in doing this, the district court said that he observed this particular prospective juror and that he did not observe personally that the prospective juror was staring at Mr. Strong. Now I would point out to the record at record ID number 584 through 587 wherein there was another example. While the district court maintained control over his courtroom and maintained quite an extensive amount of control over the selection process, he was not in a position to completely observe all the actions of all the prospective jurors entirely. In the record ID that I cite to, it was a situation where one of the prospective jurors was in fact in the jury pool reading a book. And I called it to the district court's attention. And when you read the record, it will indicate that once I called it to the district judge's attention, he indicated that the juror was reading. But that's not how it actually happened. Once I called it to the judge's attention, he turned and looked towards the juror and saw that she was still reading before he observed that. That is an important fact because it goes to show that although the district court simply disregarded the race-neutral reasons proffered for the exclusion of this potential juror, he relied on the fact that he did not observe it himself, so it did not exist. Although I confirm that I did see that particular prospective juror staring at my client while the selection process was going on, and that was the reason for the elimination. But what are we supposed to do when the district judge says that he didn't observe the staring behavior and your client and you say that you did? Don't we have to have some kind of principle that we defer to the district judge who's there? Yes. We could say that we think the district judge is incredible. We're in a very awkward position, let's put it that way. We don't want to say that you're incredible. We don't want to say the district judge is incredible. What principle? I'm not asking the court to say that the district court was incredible when he indicated that he did not observe it, but the fact that he didn't observe it doesn't mean it didn't happen. In fact, he took that position as it relates to my credibility when I told him that I actually saw it. So although you're not in a position to attack the credibility of the district court judge, and the district court judge is in that position, I guess, to attack my credibility, but my point is in referring to the other example where there were things going on in the district at the court that he was not aware of, that he was not consciously observing, this is another situation where he may not have observed this prospective juror staring at my client at the time my client observed this action, which caused him concern. But your principle would then be that if you, or alternatively, if the prosecutor had made a statement that you observed a particular juror looking in a funny way, that either you or the prosecutor should prevail on the Batson challenge issue. So I'm trying to say that it applies both to challenges by defense attorneys and challenges by prosecutors. And if it is a situation where we could expect that the district judge is not always looking at that particular potential juror, we would have to say that by the lawyer involved saying, I saw this too, it wasn't just the client, I saw it too, that we would have to say that you met your burden at step three. Am I right? That we met our burden at step two, actually, and that was... Say that this event happened. That this event happened, and that it was a race-neutral... Okay, but then we have to get to step three. So what's wrong with what the district judge did at step three? What the district judge did at step three was he completely disregarded that particular assertion as pretextual and manufactured. And then he went on through his analysis and failed to address at all the assertion that that particular prospective juror worked with another prospective juror in the jury pool. I thought there was a statement. I thought that the district judge did say something about working, that they were no longer working together. That wasn't during the step three analysis by the district court. That was before he even turned to the step two analysis. So it's the order in which it's done? It's the order in which it's done because it's our position that those comments went to the fact that he rejected our race-neutral explanations for striking the juror. And then in the sum total... But Judge Moore's point, it's a totality of circumstances test with a lot of deference to the district court judge, so we're really looking for something that shows, boy, this is really a pretty serious disconnect. My sense of your argument is the key evidence of a pretty serious disconnect is you have other evidence. There were times where the judge was not watching jurors completely and so just could not have completely known whether there was staring, whether someone really was reading a book or not reading a book. But I don't know if that's enough. I mean, it seems to me the judge is assessing the whole situation, and we reduce it to these race-neutral explanations, and so then we say, is that pretextual? But that second question is based on a whole lot of things, not including just whether you saw the staring or not. I understand, Your Honor, but I would rely on the record before the court as it relates to my assertions that we're in a situation where we're offering explanations for our actions, and the judge is relying completely on his own observations as if things are occurring that he may not have seen. Thank you. If it pleases the Court, if I may reserve two minutes for rebuttal, please. I'm Christopher Sullivan here on behalf of Appellant Joseph Banks, the co-defendant in this matter. This is a carjacking case, essentially, and just briefly the facts that touch on the five assignments of error that we've raised are that these two individuals approached the driveway of a gentleman named Albert Hall, who was the victim, approached him, a gentleman with orange sleeves with a firearm and a taser in one hand, got into an altercation. The other defendant, Mr. Strong, was in some position in the driveway. Mr. Banks and Mr. Hall got into an altercation. No words at all were exchanged. The taser apparently was used, and in the course of the struggle, keys fell onto the ground, and this is according to Mr. Hall's testimony, and Mr. Hall ran off. Now, there is a dispute whether or not a firearm was discharged. Mr. Hall clearly testified that it was, and the jury so found. The issue with that that touches on the matter of the two errors that we raise here concerning the specific intent that is a prerequisite for a conviction for carjacking and the cross-reference for attempted murder are that the firearm that Mr. Banks, the gentleman with the orange sleeves, and you'll see that reference throughout the record, was a semi-automatic pistol, and the other firearm was a revolver. And that's important because when those firearms were recovered from the stolen vehicle, the semi-automatic pistol was under the driver's seat where Mr. Banks was, and the revolver was in the seat on top of it where Mr. Strong had been pulled out of the car. What matters about that is that also factually no cartridges were found and no other testing was done to determine whether these firearms had been discharged. The revolver, however, had a spent casing under the hammer of the firing pin. And that's important because the two errors that we assign related to that are, one, and I'm going in reverse order, the sentencing issue as to the cross-reference for attempted murder because the factual conclusion that the district court drew from that is that the revolver must have been the one that was discharged. And that's contrary to Mr. Hall's testimony, which is the only direct testimony on the point as far as an eyewitness. And so that is an erroneous conclusion we would submit, or it simply was the case that Mr. Banks isn't the one that fired the weapon. But in either case, we would... Does that matter who of the two of them fired the weapon? I think for purposes of the attempted murder cross-reference, I think it does because, one, it has to be foreseeable and it also has to be specifically intended. I believe the Braxton case speaks to that pretty clearly, that that has to be the goal here is to murder the person. And based on the facts here where it's not clear or that the gun that Mr. Banks had was fired or was it the one that Mr. Strong had, that just undermines the idea that Mr. Banks is the one that had some intention or even Mr. Strong, but that there was the intention to murder Mr. Hall. The second issue is regarded to the firearm or in regard to the firearm, is that the sequence of events that caused this to be in the category of a carjacking versus an aggravated assault and an auto theft or a robbery or some other combination of individual crimes versus a carjacking that you have here. You've got the fact that this pistol was brandished and that's not disputed, but what is disputed is that it was used to wrest control of the vehicle because the point at which the vehicle is taken hold of, and I believe the Holman decision speaks to this, is the key. This is such a complicated case with all these different things going. You said there's no dispute that the pistol was brandished? In other words, Mr. Hall's testimony was clear that the individual with the orange sleeves approached him with a firearm drawn, and there's nothing in the record that refutes that, that specific. Now, what else was done with the firearm? Absolutely, that's disputed. So your main proof as to why it was not Mr. Banks who brandished the revolver is that the revolver is found close to Mr. Strong in the car eventually? That's correct. It's on top of the seat in the vehicle, not under it, but actually where Mr. Strong had been seated. Also that Mr. Hall did not offer any testimony, and he was the only eyewitness that testified here, as to that there was a revolver. In other words, Mr. Banks is the only one that the testimony indicates even had a firearm, according to Mr. Hall. And again, the evidence later when the car was recovered is that there was more to it than that. So that's the other issue is the timing of the events where Mr. Hall drops his keys and runs off. And so at that point, I would submit the vehicle becomes an escape mechanism, and I think the Applewhite case from the Third Circuit speaks to this, that it's the timing that matters. If I can get back to the Batson issue, because that's a threshold issue, and certainly these other issues may not even be addressed if that one is decided in the favor of the appellants. One of the other issues here is that not only do we submit that the district court didn't adequately address or not adequately address the facially neutral race or facially valid race neutral reason, being that they were former or still coworkers, was also the fact that the district court had something of a problematic analysis in terms of deciding that the reasons proffered by the proponents of the strike were pretextual based on basically the complexion of the juror that was challenged. And that is problematic because I would submit that that test can't be applied in another situation without getting into gradations of skin color, which this entire Batson analysis is meant to avoid, to prevent. And so that's a bit troubling. And clearly the district court was trying to go through the steps and clearly the parties were trying to do their best to offer either reasons that they had for making that strike. So a problem in these kinds of cases could be that some of the things that the district judge says are clearly wrong. So one example could be that the district judge says that they fail at step two when we might think, no, they don't fail at step two. But then the district judge goes on to step three. So couldn't a district judge cure a problem by moving on to step three and saying in any event at step three, I believe that the reason that is given does not meet the burden? What I think, as I understand the way the district court addressed it, was that in step three he determined that this was a pretextual reason. And the reason he stated he thought it was pretextual was the complexion of this juror as being particularly pale. And so I think that that's getting at the step three. So the district judge definitely says that this person was remarkably white and then says that probably sounds bad. So the district judge himself is realizing that he's going in an improper direction. But then doesn't he go on to address other factors? Well, then certainly the issue of whether or not he observed personally or whether the district judge observed the staring was addressed. But in terms of it being a pretext, I think that's as much of a part of that conclusion as the idea that the judge didn't observe it himself. And certainly that's a factor, whether the trial judge saw it or not. But also that's just one of many of the circumstances that are to be considered. And so the judge has to assess the credibility of the proponents of the strike. But here it almost seems that that was . . . So your key point is the staring point? That's part of it. Now, I mean, granted that is as to Mr. Strong, but we're at the same table and essentially in the same boat. So that is one issue. But the other issue is also that the fact that the juror had worked for one of the other . . . But no longer did. Right, but I believe he had . . . Why isn't that a good reason to be skeptical of that explanation? Well, I mean, I think that you have the potential, particularly where this juror I believe had helped hire him. It wasn't just that they had been co-workers, but that she had been part of the process to hire him. As it turns out, she ended up being the foreperson. But I think that that was . . . The concern, and this was addressed earlier on in the record, I believe, I don't want to misquote it, around . . . I think it was around 501, that would there be a block? In other words, would these jurors not think independently if you have kind of this block of persons that have this connection? Did they still have a relationship? I don't know that it was clear that they still had an ongoing, but they knew each other. That's established. Well, I mean . . . You're saying you can't have jurors who know each other? Not automatically, but if there's a concern about it, certainly with the circumstances where that . . . My time is over, if I may. If you've got a situation where that is a concern, where one juror had secured or helped secure employment for another juror, that is a facially valid, race-neutral reason. And the burden here is light. It's screenly light, I believe, as the Harris opinion says. And that is not the only reason. And you also have the staring issue, which, again, that is more as to Mr. Strong, but it still applies. We joined in the objection, and apparent hostility to one defendant could easily translate to another. So we think that's also a valid reason that was not adequately addressed here. So how would the district judge properly have addressed these two reasons, in your mind? What should the district judge have done at Step 3? Well, I think that . . . Other than rule for you. Certainly. But to have addressed more adequately or at all the issue of the employment, as to whether that was explored, why is that? I mean, the Court's doing that now, but that wasn't done at the time. So I think that could have been fleshed out better. The other issue is that . . . Did the Court say that they had no relationship now? Right. I mean, that was the conclusion that they drew, but that still doesn't alleviate the concern entirely. So should the district judge have called the juror up and asked whether he would be influenced by being on the same jury as the other person who had helped him get the job? Certainly, that could have been done. And the other issue, too, is that the burden at this point isn't relieved from the opponent of the strike. And so in weighing those factors, whether the prima facie case outweighs the valid or facially valid reasons that have been made by the proponent of the strike, that burden doesn't shift at that point back to the, in this case, defendants. And so in this case, the prima facie case was strictly these three individuals were struck. Two of them were for undoubtedly valid reasons that no one is questioning. And so you only have this one. And so is that enough on balance? And I'd submit that it isn't. We would ask the Court to reverse and remand due to this being a structural error. Thank you, Counsel. Good morning. May it please the Court, David Biggers, representing the government from the Western District of Tennessee where Edward L. Stanley III is the U.S. Attorney. We'll start first by addressing the Batson issue. And to answer Judge Moore's question, the Court actually did inquire of Mr. Friend as to whether or not his relationship with Ms. Roberts had an effect, would have an effect on his ability to be fair and impartial throughout the proceedings. Can I just ask you a question there? I mean, it sounds like the judge was thinking this whole inquiry turns in whether you get to for cause. And that can't be, this all doesn't collapse into for cause, right? I mean, all you need is a race-neutral explanation. You don't have to say it's so good that it would allow for a for cause because then you've eliminated the whole point of parameters. Respectfully, Your Honor, the lower court, the district court, did not think that the for cause conclusion was simply the only analysis that had to be made. Looking at the record, it's important to acknowledge how the district court implemented the three-prong analysis. The court initially found that there was a prominent face showing by the government that nine out of the ten jurors struck by the defense were all Caucasian or white. The court then moved on to the specific three last-struck jurors that were being contested. Before accepting any reason from the defendant, the court reviewed its notes for each juror struck. In reviewing those notes, the court pointed out that Mr. Friend did work with the other juror at some point in time. It was clarified that they no longer worked together and that when they did work together, they did not work in the same departments and had no contact. It was after that analysis and after the analysis of the court's notes on all three jurors that the court then went to Mr. Friend and asked the defense for its reason, race-neutral reason. At that time, the defense counsel for Defendant Strong stated that the reason was the staring. The defense counsel was clear on the record that it was the defendant, Strong, who brought that to his attention. At that time, the defense counsel, Mr. Paylor, did not mention that he himself witnessed that particular juror looking towards the defense table. The court then moved on and asked co-defendant's counsel, Mr. Sullivan, whether there was anything to add. At that point, Mr. Sullivan notified the court that other than the employment relationship with the other juror, there was nothing that he had to add. In fact, Mr. Sullivan added that that had been addressed and that was not a big deal. Mr. Sullivan stated that on the record at the time that was proffered. The court then moved on to the reasons for the other two jurors struck before going through its complete analysis. The court went through its analysis on Mr. Friend last. After finding that the other two jurors were properly struck and there was a race-neutral reason offered that was not pretextual, the court went through its analysis on Mr. Friend and found that the race-neutral explanation provided by the defendants was not, in fact, race-neutral at all. He found that it was a weak assertion and also asserted for the record that even if it was a facially valid race-neutral reason, it would fall under the third prong as being pretextual. In that particular analysis, the district court is given great deference to determine whether or not the credibility of the reason provided by the defendant outweighs the prima facie showing given by the government. And in this particular case, the court found that it did not. Moving on to the sufficiency of the evidence claim. The standard for the sufficiency of the evidence is looking at the evidence in the light most favorable to the government, specifically dealing with the carjacking for both defendants. It's clear that the elements of carjacking were proven beyond a reasonable doubt before the jury. The government had to prove that with the intent to cause physical, serious physical injury or death, the defendants took a car from the person and presence of another individual that had been affected in a state commerce, and they did so by force, violence, or intimidation. What's your answer to the two attempted murder enhancements? I'm sorry, repeat. I didn't hear the question. What's your answer to the attempted murder sentencing enhancements? The attempted murder sentencing enhancement was properly applied in this particular case. Mr. Sullivan, representing for Defendant Banks, asserts that it is important with the court's assessment as to who fired the shot and which gun was fired. The government submits that that is not important. This court is tasked with looking at two separate issues. The first issue dealing with sufficiency of the evidence claims deals with the light most favorable to the government beyond a reasonable doubt. The sentencing issue dealing with the cross-reference to attempted murder is preponderance of the evidence. The court in this particular case went on record at the sentencing at both Defendant Strong's and Defendant Banks' sentencing hearings and went on the record how vivid the description of the events were from the victim, Albert Hall, throughout his testimony, how specific he was in that Defendant Banks, the person dressed in the same clothing that Defendant Banks was found in, driving his vehicle, came up to him with the taser, with the gun in hand, pointed the gun in his face, tased him as he tried to resist. He was chased into his backyard. As Victim Hall jumped over the fence, Defendant Banks fired shots. Victim Hall was asked on cross-examination about this, and he testified that he heard the bullets pass by him. He stated that at that time he made the decision to lay prone on the ground, face down. The terminology he used was he jumped over the fence suicide and hit the ground head first. He laid there prone to make it appear as though he was dead, and that is when the Defendant Banks then walked back to the vehicle, and he heard his car crank up, and he saw it leaving on the roadway as he crossed the street to run to his neighbor's home. So going to the attempted murder cross-reference, it was properly applied in this particular case because the defendants in this case clearly showed their specific intent to commit murder in this particular case. That cross-reference was applied in cases like Vaught, where the court found that the attempted murder cross-reference was applicable, where the defendant did not even fire a shot. He merely made statements on a previous occasion about his intent or desire to kill someone, and then was found driving past that person's home with a firearm in his possession. There are many theories, I think, that your opponents have to contest what you've just said, one of which is going to the sufficiency of the evidence of the carjacking. Was this really just an attempt to rob them of money, and only because the keys dropped and the hopping over the fence and the lane prone did the sort of second decision to flee in the car occur? How do you respond to that? The government would urge the court to look to three specific things. First, how did the defendants, both defendants, come to approach the victim, Mr. Hall? It was clear on the record that these individuals were all strangers to one another. Mr. Hall testified that he first saw both defendants as they were walking together down the street, and he was still driving his vehicle along the roadway. As he pulled into his driveway, he testified that the defendants, both defendants, were walking in front of his home. It was only once he got into his driveway and got out of his car, as Mr. Hall was getting out of his car, that both defendants ran up the driveway. As defendant Banks ran up the driveway with defendant Strong, he has a gun in his hand. The pistol in his hand pointed at Mr. Hall. Did Hall say it was a pistol in Banks' hand? Mr. Hall did testify that it was a black pistol, not a revolver, in Banks' hand as he came up the driveway, along with a pink Taser in his other hand. Secondly, if you look at the fact that the weapon is in his hand as he approaches him, they come up the driveway to a stranger with a gun out. The only thing that the defendants know the victim has in his possession is the vehicle. This is cited in the record, but it's not a plain car. It's a very unique car. It's a University of Memphis blue with University of Memphis decals along the car rims, two televisions in the car, along with a sound system. So this is a very noticeable vehicle. Once they get up the driveway, the third thing, look at what was taken. There's no indication that there were any statements made as to what the defendants wanted. They didn't ask him to pull out his pockets. They didn't demand money. Even after the defendant Banks chased the victim around the home, fired shots at him, and thought he was lying on the ground dead, he had the keys to go in his home if he wanted to. He didn't do that. Look at what was taken. The only thing that was taken in this case was the vehicle. Furthermore, look to the jail calls. In the jail calls, the defendant strong states that he was going to get the rims off the vehicle. That was what he was going to get from the carjacking. So it's clear from the record that the sufficiency standard in taking the light most favorable to the government, that the government satisfied its burden on the carjacking offense, and it was not attenuated. So on the attempted murder sentencing enhancement, what do you do with the argument that your opponents were making that the placement of the guns in the car when the defendants were apprehended is critical here? The government submitted that it's not critical. The attempted murder cross-reference is applied based on the actions that occurred outside of the vehicle when defendant Banks fired shots at the victim hall as he jumped over the fence in order to obtain his vehicle. The case law is clear that the defendants in committing a carjacking offense must possess the intent to commit serious bodily injury or death. In this particular case, defendant Banks did exhibit those actions in that he fired shots at victim hall. Where the guns were found inside the vehicle minutes later, after both defendants fled the scene and ensued a high-speed chase with law enforcement, is of no consequence as to the application of the attempted murder cross-reference. And I'll reflect my lack of knowledge here. Does it matter that there was only evidence of one shot being fired from the revolver, or am I misunderstanding those facts? I dispute what some of the defense counsel stated in his earlier argument. The only evidence on the record that a gun was fired came from witness Albert Hall. And the court found that Albert Hall was very credible in his description of the events of his carjacking that occurred on that date. Albert Hall was clear that the person matching the description of defendant Banks was in possession of a black pistol. And that defendant fired the shots at him as he jumped over the fence. And multiple shots. More than one. Albert, I don't recall if it was one or two shots, Your Honor. But it was at least one or two shots fired. You also had testimony from crime scene officers, including Anthony Barberato, who testified that they came onto the scene to make an attempt to obtain shell casings. Officer Barberato testified that during this time of year, it was October, there were leaves on the ground, and they came out with a metal detector to attempt to obtain shell casings, but they did not. The government submitted that that does not mean that shell casings did not exist just because they were not found. The testimony of the shooting that was the basis for the cross-reference to attempted murder is based on the testimony of Albert Hall. If you look at this, the nexus between the carjacking and the violence, the shooting that occurred, defense counsels submit the Applewhite case as well as the Harris case. Those cases are clearly dissimilar from the facts of this particular case. If I can interrupt, at sentencing, the district judge can look at evidence from the PSR, right? Yes. If it's not contested. That is correct. I thought there was evidence that the revolver was found in a particular place and that there was only evidence that would suggest one shot. I'm not sure about either of those, and if you could clarify that, that would be helpful. Judge Moore, you're absolutely correct. The evidence from Albert Hall was that shots were fired at him by the person matching the description of Defendant Banks, and that person was wielding a black pistol. When the vehicle was recovered, the revolver that Defendant Strong was convicted of possessing as well as Defendant Banks was found with one spent shell casing inside of it underneath the handle. The district court did make the finding or inference at sentencing that at least that firearm had been fired. For purposes of the cross-reference to attempted murder, it does not matter which firearm was fired because the basis for the application of the cross-reference has to do with what the victim perceived and testified to at sentencing, which the court heavily relied upon at sentencing. Dealing with the two cases, Applewade and Harris, both of those cases dealt with defendants who knew the victims. There was clearly an altercation or dispute separate, part and parcel, from the carjackings that occurred in those two cases. In this case, those are not the facts. Neither defendant knew the victim. The only thing that drew them to the victim, Albert Hall, was his Lexus GS300, and that was the only thing taken. Sufficiency of the evidence as to Defendant Strong as an aider and abetter for the 924C count, based on the Roseland decision, the government must show that the defendant was actively involved in the violent crime and had advanced knowledge that his confederate or co-defendant was armed. In this particular case, the government submits that both of those existed. The defendant, Strong, was walking with Defendant Banks along the side of the road when they first saw, both saw, Victim Hall driving in his vehicle. Both defendants ran up the driveway towards Victim Hall as he got out of his vehicle. The mere fact that Defendant Strong stopped at the edge of the driveway to serve as a lookout does nothing to negate his culpability for it. In fact, Defendant Strong ran up the driveway with Defendant Banks as the gun was in his hand, as he was wielding the gun. So he had prior knowledge of the presence of the firearm. Courts have held, specifically in Roseland, in determining whether or not the co-defendant has sufficient or adequate knowledge prior to the display of that gun, also considered whether or not the victim or that defendant had an opportunity to remove himself from the crime. In this particular case, not only did Defendant Strong see the gun prior to the initiation of the armed carjacking, but he saw the gun, he heard the gun being fired, and after that he got inside of the armed, inside of the carjacked vehicle with Defendant Banks. They fled the scene, they were in a high-speed chase, and the vehicle wrecked out. In addition to that, Defendant Strong was convicted, was found to be in possession of the revolver that was found in the passenger seat of the vehicle, which means that Albert Hall testified that that firearm was not inside the car prior to the car being taken by the defendants, which means that Defendant Strong had to be in possession of that firearm as he approached the victim's residence or the victim's vehicle with Defendant Banks. So not only did he know Banks was armed, but he was also armed. In addition to that, listen to the jail calls. In the jail calls, Defendant Strong talks about he was the one who was supposed to receive the rims from the vehicle, and he also boasted about how this carjacking would boost his credibility in the community or the neighborhood for being for real is the terminology that he used. And the jail calls were introduced at trial? Yes, the jail calls were properly introduced. Specifically, Defendant Banks raised on appeal the admissibility of the jail calls and whether or not the district court abused his discretion. The government submits that the district court did not abuse his discretion and that the witness testifying to the jail calls laid the proper foundation as to her knowledge of the jail calls and the manner in which she pulled the jail calls and associated them with Defendant Banks. Specifically, she testified that each defendant is associated with an R&R, records and identification number. Using that number, she pulled all the calls associated with under that PIN number that has to be entered before you make any calls. That was not the only step she took to ensure that it was, in fact, the defendant.  Defendants are given an opportunity to provide numbers to the Shelby County jail facility of loved ones or people on their call list. In those numbers were the defendant's mother, Defendant Banks' mother. Using that number, as well as listening to the jail calls, Officer Harris listened to the calls to listen to the voices, listen to the content of the calls and see if they, in fact, matched what that particular defendant was in custody for. Using that same number, she tracked the numbers called from the intake area. The intake area is unique because PIN numbers are not required to be submitted before placing calls. But Officer Harris testified that she matched the numbers called and associated with the R&R account for Defendant Banks with the numbers called from the intake area. The particular call that defense counsel objects to was a call to a number that's in his account, his mother's number. She listened to that call, and during that call, not only does Defendant Banks refer to his mother as mother and does she refer to him as Joseph, he also recounts the events of the carjacking that occurred that very same day the call is being made from the intake area. So the government submits that it was not abuse of discretion and that it was properly admitted. So taking you back, and I see your yellow lights on, taking you back to the Batson Challenge, suppose that we had some difficulty with some of the ways that the district judge handled the Batson Challenge. What is a court of appeals supposed to do then? If I may? Yes. It depends on two things. First, the question is whether or not this court has a problem with how the district court, or whether or not the district court, reviewed both reasons asserted by the defendants, first being the staring, secondly the employment issue. If the court finds that the district court properly reviewed both reasons, then the government will submit that the third prong, and we're looking at the third prong of the analysis, which is whether or not it was pretextual, not whether or not it was a race-neutral reason. But looking at that third prong, the lower court found that it did not satisfy that prong, and that it was pretextual. And looking at the strength of the reason given, it did not outweigh the strength of the prima facie case set forth or advanced by the government. And the court went through at length the reasons and basis for making that finding, specifically with regard to the staring. The defense counsel, Mr. Poehler, did not bring up the fact that he personally observed staring until after the court had made his ruling. That was something that was brought up after the fact. And even when making that finding, Mr. Poehler did not say that he observed the witness staring, but he mentioned, Your Honor, I'm reading from the record. This is page 528. He only said, I have to say, when Mr. Strong mentioned it to me, I did observe Mr. Friend. He says, I didn't observe him, do it frequently, but I did notice, and I just thought he was looking in our direction. That's what Mr. Poehler said as the court made its ruling. So the government submitted that under the clear air standard, that the finding of the court should not be touched. It should be affirmed. In the event that this court finds that the district court did not properly assess the issue of employment, if that occurred, then this court should remand it to give the district court an opportunity to flesh out the record with regard to that race neutral reason. But the government submits that the court did review it, it did conduct an analysis on that, and found that it was not strong and it lacked credibility to outweigh the prima facie case set forth by the government. For those reasons, the government submits that it should be affirmed. Thank you. Your Honors, in addressing the sufficiency of the evidence arguments by my opponent, I would point out that as it relates to Mr. Strong, he was convicted of the carjacking in the 924C as an aider and abetter. According to the Rosemont case, an aider and abetter conviction requires not just the facilitation of the act itself, but it requires the specific intent to cause the crime and the specific intent to have that crime committed. In reviewing the record in this matter, to the extent Mr. Strong was involved in this case, it talks about Mr. Strong in the middle of the driveway of Mr. Hall's home. There's nothing in the record that indicates at what point in time Mr. Banks pulled that firearm out of his possession and confronted Mr. Hall with that firearm. There's nothing in the record at all that Mr. Banks prior to the action, Mr. Strong prior to the actions of Mr. Banks, was aware that Mr. Banks possessed a firearm at all. There is nothing that points to a specific intent that this crime be committed by Mr. Strong whatsoever. There was one shot, according to the testimony in the record, and that testimony was from Mr. Hall, that he heard one shot fired throughout this particular incident. As it relates to the placement of the firearm in the car, there's nothing that indicates that the pistol or the revolver that Mr. Strong was in possession of as it relates to constructive possession, because it wasn't found on his person. It was found in the car in the seat that he was actually sitting on. There was nothing that indicated at what point in time that that firearm was, in fact, fired, if it had been fired that day. That's the amount of time I'll submit. Thank you. If I may just quickly, as Mr. Paler indicated, it was a single shot is what the testimony was from Mr. Hall, and that is important because a single shot where somebody is running, again, would suggest that perhaps this wasn't an attempted murder but perhaps to scare, again, if it were fired at all, and that is in dispute. But, again, the Braxton case, you've got there where somebody fired. The evidence show in terms of whether he fell as the shot was fired. Mr. Hall said that he jumped over the fence and lay prone. I'm just trying to add up whether there's a reason for only one shot. He thought he got him the first time. There was actually an objection about that because Mr. Hall testified that he thought that's what Banks was thinking, and certainly that's not. He can't speculate as to that. Maybe I should just ask, is there any evidence about the timing of his landing on the ground in connection with the shot? I know the government's position is that he fell as if it were lying prone, as if he had just been shot. Now, there were some contradictions about the sequence. I guess I'm only saying this because you said it's significant that the evidence showed one shot, and now I'm trying to understand why it's helpful to you that there was just one shot. I think if you look at a case like the Braxton case, where you can have actually multiple shots at law enforcement through a doorway, and that is not specifically intended to kill. And so our position here is that you have a single shot, if at all. And, again, we're not conceding that there was a single shot, but that's what Mr. Hall said. But under the circumstances where he's some distance away moving, if the intent was to murder, there were certainly those opportunities much sooner than that. And it simply just doesn't make sense. And if I may just quickly, on the issue of the career offender, certainly the Doyle and Martin cases control that word. The qualifying offense was the evading arrest. But I will just point out that the Supreme Court has recently called for resubmission of briefs in the Johnson case as to whether or not the residual clause is unconstitutionally vague. So that is an issue that we have raised. Not that specific about Johnson, but the residual clause and the vagueness of that. So I would point that out and submit. Thank you, counsel. The case will be submitted. There being no further cases to be argued this morning, the clerk may recess the court. This honorable court is now adjourned. Thank you.